UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DONALD C. SMITH and DCS CONSULTING, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>KOHLWEISS, INC., and FRANK KOHLWEISS,<br><br>Defendants. | Case No: C 11-00239 SBA<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Docket 37 |

Plaintiffs Donald Smith and DCS Consulting, Inc. (collectively, "Plaintiffs") brought this civil rights action against Defendants Kohlweiss, Inc. and Frank Kohlweiss (collectively, "Defendants") pursuant to 42 U.S.C. § 1983. Compl., Dkt. 1. The parties are presently before the Court on Defendants' motion to dismiss the second amended complaint ("SAC") under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 37. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Defendants' motion to dismiss, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

**I.   BACKGROUND**

   **A.   Factual Background**

The SAC generally alleges that Defendants violated Plaintiffs Fourteenth Amendment property rights when Defendants caused a fraudulent writ or writs (hereafter "writ") of execution to be levied upon certain real property owned by Plaintiff Donald

Smith for the purpose of enforcing a state court money judgment,[1] which resulted in Plaintiffs paying more money than they were required to pay to satisfy the judgment. See SAC ¶¶ 1-10. The SAC also alleges that after Plaintiffs satisfied the state court judgment, "defendant" caused a second fraudulent writ of execution to be issued to satisfy trial and appellate court attorneys' fee awards. See id. ¶¶ 8-11. Although not entirely clear, it appears that Plaintiffs allege that their Fourteenth Amendment property rights were also violated in connection with the second writ of execution because their satisfaction of the writ resulted in them paying more money than they were required to pay under the state court judgment and the attorneys' fees awards. See id.

It is undisputed that the state court judgment that provides the basis for the first writ of execution arose out of a dispute between the parties regarding Plaintiffs' sale of an automotive parts business to Kohlweiss, Inc. See Dkt. 35. The modified state court judgment ("judgment") requires Plaintiffs to pay Kohlweiss, Inc. $339,832.57, plus attorneys' fees and interest. SAC ¶ 1; Defs.' Request for Judicial Notice ("RJN"), Exh. F[A].[2] The judgment also provides that Kohlweiss, Inc. must return possession of certain inventory to Plaintiffs up to the amount of $250,000, and to the extent that any portion of the inventory is no longer available, Plaintiffs are entitled to receive a credit against the money owed by Plaintiffs in an amount equal to the cost allocated to that item at the time of closing of the sale under the Agreement of Sale, along with a proportional credit for the interest owed by Plaintiffs. SAC ¶ 1; Defs.' RJN, Exh. F[A].

---

[1] The parties do not dispute that the judgment referred to in the SAC is a money judgment obtained by Defendants against Plaintiffs in an action brought in the San Mateo County Superior Court.

[2] Defendants request the Court take judicial notice of various documents, including the underlying state court judgment. Dkt. 24. The Court may take judicial notice of the state court judgment because it is referenced by the complaint and accepted by the parties as authentic. See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003); Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). The Court may also take judicial notice of this document because it is a matter of public record. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006).

In addition, the judgment states that "within five (5) business days after the entry of judgment, [Kohlweiss, Inc.] shall provide [Plaintiffs] . . . an inventory list showing the items that will be returned and those that are no longer available to be returned and shall include thereon the cost of the items no longer available to be returned." Defs.' RJN, Exh. F[A]. The judgment also states that the return of the inventory is conditioned upon Plaintiffs paying the sums ordered by the judgment, and that the parties must either make a simultaneous exchange or mutually agree upon a method to effectuate the terms of the judgment. Id. Finally, the judgment states that the court retains jurisdiction "in connection with the enforcement of the return of the inventory . . . and payment of sums due. . . ." Id.

The following facts are based on the allegations in the SAC, which are taken as true for the purposes of the instant motion. On March 1, 2006, a state court judgment was issued which requires Plaintiffs to pay Kohlweiss, Inc. $339,832.57, plus attorneys' fees and interest. SAC ¶ 1. On October 30, 2006, Kohlweiss, Inc. advised Plaintiffs that it would give them a credit for the inventory that is no longer available to be returned in the amount of $114,603.81. SAC ¶ 2. On November 29, 2006, without explaining why the calculation had significantly changed, Kohlweiss, Inc. advised Plaintiffs that the sold inventory was not as previously stated and that it would give them a credit in the amount of $90,679.54. Id. ¶ 3.

On an unspecified date, Plaintiffs allegedly attempted to inspect the inventory in order to determine the amount of the credit they were entitled to receive, but were denied access to the inventory. Compl. ¶ 5. On December 11, 2006, without explaining why the calculation had changed, Kohlweiss, Inc. advised Plaintiffs that it would give them a credit in the amount of $101,219. Id. ¶ 4. Kohlweiss, Inc. also advised Plaintiffs that they would not be permitted to inspect the inventory until they paid the amount set forth in the judgment, less a credit for the sold inventory. Id. ¶ 5.

On or around January 10, 2007, a "MEMORANDUM OF COSTS AFTER JUDGMENT, ACKNOWLEDGMENT OF CREDIT, AND DECLARATION OF ACCRUED INTEREST" was filed under penalty of perjury in the in San Mateo County

1  clerk's office.  SAC ¶ 6.  The memorandum states that Plaintiffs are entitled to a credit in

2  the amount of $101,219.  Id.  According to Plaintiffs, the "defendant" knew that this

3  statement was false when they made it.  See id.  Plaintiffs further allege that, in reliance on

4  the fact that the amount of the credit was stated under penalty of perjury, they believed the

5  credit was true and did not have any reason to believe it was not true.  Id.

6       On January 11, 2007, Kohlweiss, Inc. obtained a writ of execution providing

7  Plaintiffs a credit in the amount of $101,219.  SAC ¶ 7.  Thereafter, writs of attachment on

8  Plaintiffs' real property in San Mateo and Butte counties were recorded.  Id.  On or around

9  August 27, 2007, Plaintiffs satisfied the writ by tendering $410,872.62.  See id. ¶ 8.

10       On December 17, 2007, Kohlweiss, Inc. was awarded attorney's fees and costs in the

11  amount of $22,000 in connection with "the excessive and fraudulent execution and

12  attachment."  SAC ¶ 8a.  After additional attorney's fees were awarded to Kohlweiss, Inc.

13  on appeal, "defendant" caused a second writ of execution to be issued on June 18, 2008 in

14  the amount of $34,762.22.  Id. ¶¶ 8a, 8b.  The writ was supported by a "MEMORANDUM

15  OF COSTS AFTER JUDGMENT, ACKNOWLEDGMENT OF CREDIT, AND

16  DECLARATION OF ACCRUED INTEREST" signed under penalty of perjury.  Id. ¶ 8b.

17  The memorandum, however, did not provide for any additional credit for inventory that

18  was no longer available to be returned.  Id.  Plaintiffs claim that they relied on that fact

19  because the memorandum was signed under penalty of perjury and they did not have any

20  reason to believe they were entitled to any additional credit since they had been prevented

21  from inspecting the inventory until all sums had been paid.  Id.

22       According to Plaintiffs, the "defendant's execution, attachment and satisfaction

23  deprived [them] of their property rights in violation of the Fourteenth Amendment to the

24  United States Constitution."  SAC ¶ 9.  Plaintiffs assert that the "attachment, levy and

25  execution were knowingly excessive and fraudulent," and that "[w]hen they occurred, the

26  defendant was acting under color of state law within the meaning of . . . § 1983 in that the

27  fraudulent writ(s) of execution/attachment were served and processed by the San Mateo

28  County Sheriff's department and the wrongful execution on the judgment was made by the

County of San Mateo on the defendant's behalf."[3] Id. According to Plaintiffs, Kohlweiss, Inc.'s "hiring of the County of San Mateo for the purpose of perpetrating an excessive and fraudulent execution on the judgment made the aforesaid state action its own." Id.

During the period from May 2010 through mid-July 2010, "Defendant" returned the available inventory to Plaintiffs. SAC ¶ 10. Upon receipt of the entire unsold inventory in July 2010, Plaintiffs discovered that they should have received at least $183,808.90 in credit as opposed to the $101,219 they actually received. Id. In other words, they discovered that they overpaid Defendants in the amount of $82,589.90.

Plaintiffs allege that as a direct and proximate result of the "wrongful execution," they have been generally and specially damaged in that they were deprived of the use of money, they paid interest on money that was borrowed to satisfy the judgment, and they sold assets at a loss to pay back money that was borrowed to satisfy the judgment. SAC ¶ 12. Plaintiffs also allege that Donald Smith was damaged in that real property he owned in which a judgment lien was recorded could not be sold to avoid a "tax consequence." Id. Additionally, as a direct and proximate result of the wrongful execution, Plaintiffs allege that Donald Smith suffered and continues to suffer severe emotional distress, and Plaintiffs have incurred and will incur attorney's fees and costs. Id. ¶¶ 13-14. Finally, Plaintiffs allege that they are entitled to punitive damages because "Defendants' wrongful execution was fraudulent" and was "malicious in that it consciously disregarded the plaintiffs' property rights and was intended to cause them harm." Id. ¶ 15.

**B.    Procedural History**

On January 18, 2011, Plaintiffs commenced the instant action against Defendants. Compl., Dkt. 1. Plaintiffs filed an amended complaint on February 8, 2011 alleging one claim for relief under § 1983. See First Amended Complaint ("FAC"), Dkt. 5. On March 20, 2012, the Court issued an Order dismissing the FAC on the ground that Plaintiffs' §

---

[3] The SAC does not specify when the second writ of execution was satisfied. According to Defendants, the second writ of execution was satisfied on July 17, 2008. Defs.' Opp. at 2.

**1** 1983 claim is time-barred. Dkt. 35.[4] Plaintiffs were granted leave to allege facts in support of their position that the date of accrual was postponed until July 2010 under the discovery rule. Id. Plaintiffs were also granted leave to allege facts to invoke the doctrine of equitable tolling and/or the doctrine of equitable estoppel. Id.

On April 24, 2012, Plaintiffs filed a second amended complaint alleging two claims for relief: (1) violation of civil rights under § 1983; and (2) conspiracy to violate civil rights. Dkt. 36. On May 8, 2012, Defendants filed a motion to dismiss. Dkt. 37. Plaintiffs filed an opposition on May 5, 2012. Dkt. 39. A reply brief was filed on May 29, 2012. Dkt. 41.

## II. DISCUSSION

### A. Request for Judicial Notice

In connection with their motion to dismiss, Defendants filed a request for judicial notice pursuant to Rule 201 of the Federal Rules of Evidence. Dkt. 38. Defendants request the Court take judicial notice of various documents, including pleadings and orders, filed in a related consolidated state court action entitled Kohlweiss, Inc. v. Donald Smith, et al., Case Nos. Civ. 435733 and Civ. 438390. Plaintiffs do not object to the Court taking judicial notice of the existence of these documents. Pls.' Opp. at 2-3. However, they object to the Court taking judicial notice of any facts or information contained in two letters attached to Defendants' request for judicial notice. Id.

A court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be

---

[4] In their opposition to the motion to dismiss the FAC, Plaintiffs suggested that the FAC stated a cause of action for conspiracy to violate property rights under the Fourteenth Amendment. Dkt. 35. The Court rejected Plaintiffs' suggestion, stating that because Plaintiffs had failed to state an actionable constitutional violation, they had failed to state an actionable conspiracy claim, citing Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys., 568 F.3d 725, 734, 740 (9th Cir. 2009). Id.

questioned. Fed.R.Evid. 201(b). A court may take judicial notice of court filings and other matters of public record. See Reyn's Pasta Bella, 442 F.3d at 746 n. 6. Accordingly, Defendants' request for judicial notice is GRANTED. The Court notes, however, that it does not take judicial notice of the veracity of any arguments or facts presented in the documents subject to judicial notice. See Wyatt v. Terhune, 315 F.3d 1108, 1114 n. 5 (9th Cir. 2003) (factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice); Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (a court may take judicial notice of another court's opinion, but not of the truth of the facts recited therein); M/V American Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983) (a court may take judicial notice of court records, but it may not take judicial notice of the truth of the contents of all documents found therein).

### B. Motion to Dismiss[5]

#### 1. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b) (6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim on which relief may be granted, the Court "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the non-moving party." Daniels–Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Sciences Securities Litigation, 536 F.3d 1049, 1055 (9th Cir. 2008).

---

[5] As a preliminary matter, the Court rejects Defendants' contention that dismissal is appropriate because Plaintiffs did not timely file their SAC. The SAC was filed on April 24, 2012, less than twenty-one days after the Order dismissing the SAC was entered on April 6, 2012. See Dkt. 35, 36.

The complaint is properly dismissed if it fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011).

On a Rule 12(b)(6) motion, the Court's inquiry generally is limited to the allegations in the complaint. Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." Ritchie, 342 F.3d at 908.

Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile. See Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-1088 (9th Cir. 2002); see also Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (if a court dismisses the complaint, it should grant leave to amend, unless it determines that the pleading could not possibly be cured by the allegation of other facts).

2. **Fourteenth Amendment § 1983 Claim**

   a. **Accrual**

Defendants argue that Plaintiffs' Fourteenth Amendment § 1983 claim is time-barred because it accrued over three years prior to the filing of the instant action on January 18, 2011. Defs.' Mtn. at 8-9. In response, Plaintiffs contend that their § 1983 claim is not time-

**1**  barred because it did not accrue until Defendants returned all of the unsold inventory in
**2**  July 2010.  Pls.' Opp. at 3-4.

**3**  　　　　A claim may be dismissed because it is barred by the relevant statute of limitations
**4**  when the running of the statute "is apparent from the face of the complaint."  Ledesma v.
**5**  Jack Stewart Produce, Inc., 816 F.2d 482, 484 n. 1 (9th Cir. 1987).  California's statute of
**6**  limitations for personal injury actions governs claims brought pursuant to § 1983.  Colony
**7**  Cove Prop., LLC v. City of Carson, 640 F.3d 948, 956 (9th Cir. 2011).  In California,
**8**  personal injury claims that accrued after January 1, 2003 are subject to a two-year statute of
**9**  limitations.  See Cal. Code Civ. Proc. § 335.1; Canatella v. Van De Kamp, 486 F.3d 1128,
**10** 1132-1133 (9th Cir. 2007).

**11** 　　　　Even though California law determines the applicable statute of limitations, the
**12** accrual of a § 1983 cause of action is a question of federal law.  Wallace v. Kato, 549 U.S.
**13** 384, 388 (2007).  "Under federal law, 'a claim accrues when the plaintiff knows or has
**14** reason to know of the injury which is the basis of the action.' "  Knox v. Davis, 260 F.3d
**15** 1009, 1013 (9th Cir. 2001).  Stated somewhat differently, the Supreme Court has explained
**16** that the standard rule is that accrual occurs when the plaintiff has a complete and present
**17** cause of action, that is, when the plaintiff can file suit and obtain relief.  Wallace, 549 U.S.
**18** at 388.  Generally, an action accrues when the wrongful act or omission occurs and the
**19** party has sustained damages, even when the full extent of his injury is unknown.  Id. at 391.

**20** 　　　　Plaintiffs allege that their Fourteenth Amendment property rights were violated on
**21** August 27, 2007 when Kohlweiss, Inc. wrongfully seized $82,589.90 following service of a
**22** fraudulent writ of execution to enforce a state court money judgment obtained against
**23** Plaintiffs.  Although not entirely clear, it appears that Plaintiffs allege that their Fourteenth
**24** Amendment property rights were also violated on or around June 18, 2008 when
**25** "defendant" caused a second writ of execution to be issued in the amount of $34,762.22 to
**26**
**27**
**28**

satisfy attorneys' fee awards without providing them an additional inventory credit.[6] However, because Plaintiffs did not commence the instant action until January 18, 2011, Plaintiffs did not file this action within the applicable two-year statute of limitations. As such, Plaintiffs' § 1983 claim is subject to dismissal.

Plaintiffs recognize that the statute of limitations, on its face, bars their § 1983 claim. As such, they frame their argument in terms of the "discovery rule," which postpones the beginning of the limitations period from the date the plaintiff is actually injured to the date when he discovers (or reasonably should discover) he has been injured. Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1048 (9th Cir. 2008).[7] Under the discovery rule, the statute only begins to run once a plaintiff has knowledge of the "critical facts" of his injury, which are that he has been hurt and who has inflicted the injury. Bibeau v. Pacific Northwest Research Foundation Inc., 188 F.3d 1105, 1108 (9th Cir. 1999), amended, 208 F.3d 831 (9th Cir. 2000). Because the plaintiff must be diligent in discovering the critical facts of his injury, a plaintiff who did not actually know of his claim will be barred if he should have known of it in the exercise of due diligence. Id. A plaintiff is held to his actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to him. O'Connor v. Boeing North

---

[6] The Court notes that the attorneys' fee awards that provide the basis for the second writ of execution were issued following the satisfaction of the state court judgment in August 2007. While it is undisputed that the state court judgment required Defendants to provide Plaintiffs with a credit for inventory that is "no longer available to be returned," Plaintiffs have not alleged any facts to support their suggestion that Defendants were required to provide an additional inventory credit in connection with the enforcement of the attorneys' fee awards. Thus, Plaintiffs have not alleged any facts plausibly suggesting that the second writ of execution was fraudulent, i.e., contained false information.

[7] In Merck & Co., Inc. v. Reynolds, 130 S.Ct. 1784 (2010), the United States Supreme Court explained that the discovery rule arose in fraud cases as an exception to the general limitations rule that a cause of action accrues once a plaintiff has a complete and present cause of action because "something different was needed in the case of fraud, where a defendant's deceptive conduct may prevent a plaintiff from even knowing that he or she has been defrauded." Id. at 1793. " '[W]here a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute [of limitations] does not begin to run until the fraud is discovered.' " Id. at 1794. Fraud is deemed to be discovered when, in the exercise of reasonable diligence, it could have been discovered. Id.

American, Inc., 311 F.3d 1139, 1147 (9th Cir. 2002) ("This concept of constructive notice is captured by the maxim that 'the means of knowledge are the same thing in effect as knowledge itself.' "); see Merck, 130 S.Ct. at 1794 (the discovery rule allows a claim " 'to accrue when the litigant first knows or with due diligence should know facts that will form the basis for an action'"). The party claiming the benefit of the discovery rule has the burden of demonstrating that it applies. See O'Connor, 311 F.3d at 1150.

To state a timely claim, Plaintiffs must allege facts demonstrating that their § 1983 claim accrued within two years from the commencement of the instant action on January 18, 2011. According to Plaintiffs, their § 1983 claim did not accrue until they became aware of their injury when they discovered the "wrongful execution" of the writs in July 2010 after Defendants returned the unsold inventory. Pls.' Opp. at 3-4; see also SAC ¶ 10. The gravamen of Plaintiffs' argument is that Defendants concealed the actual amount of the inventory credit owed to them under the state court judgment in order to defraud them by inducing them to pay more money than they owed under the state court judgment and the subsequent attorneys' fees awards. Plaintiffs contend that the allegations in the SAC show that they could not have discovered the "wrongful execution through investigation of sources open to them as there were no sources open to them other than the inventory." Id. at 3. While Plaintiffs acknowledge that they are charged with knowledge of facts which with due diligence they should have known, they maintain that "they relied on the accuracy of the writs of execution and did not have any reason to believe that they were not true," and that "defendants' delay in returning the inventory prevented [them] from discovering the erroneous credit." Id. at 4.

As relevant to the discovery rule, the SAC alleges:

Not having been allowed access to the inventory to determine the amount of the credit against the judgment on execution, having been advised under defendant's penalty of perjury that the acknowledgment of credit was true and correct, having seen that the original writ of execution provided the same credit set forth under penalty of perjury on the acknowledgment of credit, having been served with another writ of execution on June 18, 2008 which, under penalty of perjury did not provide for additional credit, there was not a factual basis for the plaintiffs to believe or even suspect that the calculation of credit was incorrect.

SAC ¶ 11.  The SAC further alleges that the return of the inventory in July 2010 allowed Plaintiffs to discover that they should have received at least $183,808.90 in credit as opposed to the $101,219 they actually received.  Id. ¶ 10.

The Court finds that Plaintiffs have failed to allege sufficient facts to invoke the discovery rule to delay accrual of their § 1983 claim until July 2010.  The conclusory allegations in the SAC are insufficient to satisfy the plausibility pleading standard articulated by the Supreme Court in Iqbal and Twombly.  Plaintiffs have not alleged specific facts demonstrating that it is plausible that they have remained ignorant of Defendants' alleged fraud without any fault or want of diligence or care on their part until the fraud was discovered in July 2010.  Merck, 130 S.Ct. at 1794 (" '[W]here a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute [of limitations] does not begin to run until the fraud is discovered.' "); cf. Fox v. Ethicon Endo–Surgery, Inc., 35 Cal.4th 797, 809 (2005) ("[T]o adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period.").

The SAC alleges that Plaintiffs satisfied the underlying judgment in August 2007.  The SAC, however, is silent as to Plaintiffs' due diligence from August 2007 until they discovered that they did not receive the proper inventory credit in July 2010.  As such, Plaintiffs have not sustained their burden to allege facts plausibly suggesting that, despite their due diligence, they were unable to obtain information disclosing Defendants' purported fraud until July 2010.  See Fox, 35 Cal.4th at 809 (plaintiff bears the burden to show diligence and conclusory allegations will not withstand dismissal).  The SAC does not describe any actions taken by Plaintiffs to obtain the inventory from Defendants after the judgment was satisfied in August 2007.  Plaintiffs, for instance, do not allege that they attempted to inspect or pick-up the inventory from Defendants, or that they contacted Defendants to make arrangements for Defendants to deliver the inventory.  While Plaintiffs

allege that they were prevented from inspecting the inventory "until all sums had been paid," SAC ¶ 8b, they do not dispute Defendants' contention that they refused to inspect or pick-up the inventory after the judgment was satisfied in August 2007.  Nor do they dispute Defendants' contention that letters were sent to Defendant Donald Smith's counsel in September and November 2007 requesting that Donald Smith make arrangements to inspect or pick-up the inventory.

Accordingly, the Court concludes that Plaintiffs have failed to allege sufficient facts to establish a factual basis to support the application of the discovery rule.  The SAC does not allege facts plausibly suggesting that Defendants were unable to discover the critical facts of their injury before July 2010 despite due diligence.  Absent invocation of the discovery rule, Plaintiffs § 1983 claim is time-barred, unless Plaintiff has alleged sufficient facts to invoke the doctrine of equitable tolling or doctrine of equitable estoppel.

### b.  Equitable Estoppel

Plaintiffs contend that they have alleged sufficient facts demonstrating that the doctrine of equitable estoppel applies to preclude Defendants from asserting a statute of limitations defense.  Pls.' Opp. at 4.  Equitable estoppel, also known as fraudulent concealment in the limitations setting, "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit."  See Santa Maria v. Pacific Bell, 202 F.3d 1170, 1176 (9th Cir. 2000).  For the court to find equitable estoppel against a defendant, "the plaintiff must point to some fraudulent concealment, some active conduct by the defendant 'above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.' "  Lukovsky, 535 F.3d at 1052; Guerrero v. Gates, 442 F.3d 697, 706 (9th Cir. 2006).  In order to halt the statute of limitations based on equitable estoppel, plaintiff must demonstrate that he relied on the defendant's misconduct in failing to file suit in a timely manner and plead with particularity the facts which give rise to the claim of fraudulent concealment.  Guerrero, 442 F.3d at 706-707.

The doctrine of fraudulent concealment is invoked only if the plaintiff both pleads and proves that the defendant actively misled him, and that he had neither actual nor

constructive knowledge of the facts constituting his cause of action despite his due diligence. Grimmett v. Brown, 75 F.3d 506, 514 (9th Cir. 1996); Thorman v. American Seafoods Co., 421 F.3d 1090, 1094 (9th Cir. 2005). Conclusory statements are not enough. Plaintiff must plead with particularity the circumstances of the concealment and the facts supporting its due diligence in trying to uncover the facts. Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc., 858 F.2d 499, 502 (9th Cir. 1988); Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1415-1416 (9th Cir. 1987). Merely keeping someone in the dark is not the same as affirmatively misleading the plaintiff. Thorman, 421 F.3d at 1095-1096. The plaintiff must establish affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief. Volk, 816 F.2d at 1415.

Here, Plaintiffs contend that "defendants ought to be equitably estopped from asserting [a] statute of limitations [defense]" because "[t]he defendants' delay in returning the inventory prevented [Plaintiffs] from discovering the erroneous credit." Pls.' Opp. at 4. According to Plaintiffs, the delay in returning the inventory constitutes "active conduct" by Defendants above and beyond the wrongdoing upon which Plaintiffs' § 1983 claim is premised that prevented them from suing in time. Id.

The Court finds that Plaintiffs have failed to plead sufficient facts to invoke the doctrine of equitable estoppel. Other than the allegedly fraudulent writs of execution that form the basis of Plaintiffs' § 1983 claim, Plaintiffs have not identified with particularity any fraudulent representations or other affirmative misleading conduct upon which they relied, or upon which Defendants intended to induce reliance, such that Plaintiffs were prevented from investigating and bringing this action in a timely manner. See Lukovsky, 535 F.3d at 1052 ("The primary problem with plaintiffs' argument is that their alleged basis for equitable estoppel is the same as their cause of action. As we have previously explained, the plaintiff must point to some fraudulent concealment, some active conduct by the defendant 'above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.' "). Contrary to Plaintiffs' contention,

- 14 -

Defendants' alleged delay in returning the inventory, without more, does not excuse their delay in bringing this suit. See Thorman, 421 F.3d at 1095 (silence or passive conduct does not constitute fraudulent concealment). Furthermore, as discussed above, Plaintiffs have not alleged any facts demonstrating that they exercised due diligence to uncover Defendants' allegedly fraudulent conduct from August 2007 to July 2010. See Volk, 816 F.2d at 1415-1416 (to invoke the doctrine of fraudulent concealment, the plaintiff must establish that they used due diligence in trying to uncover the facts). Accordingly, Plaintiffs have not alleged facts demonstrating that the doctrine of equitable estoppel applies to preclude Defendants from asserting a statute of limitations defense.

### c. Summary

In sum, the Court concludes that Plaintiffs have failed to allege sufficient facts to invoke the discovery rule or the doctrine of equitable estoppel.[8] Accordingly, Defendants' motion to dismiss is GRANTED.[9] Since it is unclear at this juncture whether Plaintiffs can amend the SAC to allege facts to state a timely § 1983 claim, Plaintiffs' § 1983 claim is DISMISSED with leave to amend. Plaintiffs may be able to allege facts sufficient to invoke the delayed discovery rule or the doctrine of equitable estoppel.

### 3. Conspiracy Claim

Plaintiffs' second claim for relief alleges that the Defendants conspired to violate their civil rights. See SAC ¶¶ 17-20. The Court finds that dismissal of this claim is appropriate. In their opposition brief, Plaintiffs concede that their conspiracy claim "ought to be dismissed," Pls.' Opp. at 8, which the Court construes as consent to the dismissal of

---

[8] In the Court's March 20, 2012 Order dismissing the FAC, Plaintiffs were granted leave to allege facts supporting the application of the doctrine of equitable tolling. A review of the SAC reveals that Plaintiffs have not alleged facts to invoke the doctrine of equitable tolling. "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." Santa Maria, 202 F.3d at 1178. Plaintiffs do not argue that the SAC alleges facts supporting the application of this doctrine.

[9] In light of the Court's determination that Plaintiffs' § 1983 claim is time-barred, the Court does not reach the merits of Defendants' alternative arguments in support of dismissing Plaintiffs' § 1983 claim.

this claim.  Dismissal of this claim is also appropriate because Plaintiffs have not alleged sufficient facts to support a § 1983 claim.  See Avalos, 596 F.3d at 592; see also San Diego Police Officers' Ass'n, 568 F.3d at 740 ("the absence of any actionable constitutional violation negates by definition the existence of a conspiracy to violate constitutional rights"); Cassettari v. Nevada County, Cal., 824 F.2d 735, 739 (9th Cir. 1987) (noting that "[t]he insufficiency of these allegations to support a section 1983 violation precludes a conspiracy claim predicated upon the same allegations").  Accordingly, Defendants' motion to dismiss Plaintiffs' conspiracy claim is GRANTED.  Because Plaintiffs have abandoned this claim in their opposition and have not indicated that they can amend the SAC to allege facts stating a cognizable conspiracy claim, this claim is DISMISSED without leave to amend.

## III.  CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss is GRANTED.  Plaintiffs' § 1983 claim is dismissed with leave to amend.  Plaintiffs' conspiracy claim is dismissed with prejudice.

2. Plaintiffs shall have twenty-one (21) days from the date this Order is filed to file a third amended complaint consistent with this Order.  Plaintiffs shall not add any additional claims without prior Court approval.  Plaintiffs are advised that any additional factual allegations set forth in their third amended complaint must be made in good faith and consistent with Rule 11 of the Federal Rules of Civil Procedure.  Failure to timely file a third amended complaint will result in the dismissal of this action with prejudice.  Defendants shall notify the Court if Plaintiffs fail to file a timely third amended complaint.

3. This Order terminates Docket 37.

IT IS SO ORDERED.

Dated: 3/27/13

*Saundra B. Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge